# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| **TAMARA P. DANIELS,** | * | |
| **Plaintiff** | * | |
| **v.** | * | **CIVIL NO.  JKB-13-3507** |
| **NVR, INC.,** *t/a* **Ryan Homes,** | * | |
| **Defendant** | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM</u>

### *I.  Background*

Plaintiff Tamara P. Daniels filed this lawsuit against NVR, Inc., trading as Ryan Homes ("NVR"), in the Circuit Court for Anne Arundel County, Maryland, on September 30, 2013. (Compl., ECF No. 2.)   After being served with the complaint on October 25, 2013, NVR removed the case to this Court on the basis of diversity jurisdiction.  (ECF No. 1.)   Pending before the Court is NVR's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  (ECF No. 20.)   The motion is premised on NVR's assertions that Daniels's claims are time-barred.  Following full briefing on the motion (ECF Nos. 24 & 26), Plaintiff's counsel moved to withdraw their representation of her (ECF No. 27), and the Court granted that motion (ECF No. 28).  Plaintiff has not secured another attorney to represent her and is proceeding *pro se*.  No hearing is necessary.  Local Rule 105.6 (D. Md. 2014).  The motion will be granted.

## II.  *Standard for Motion for Judgment on the Pleadings*

A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standard applicable to motions to dismiss under Rule 12(b)(6).  *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009).  A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  An inference of a mere possibility of misconduct is not sufficient to support a plausible claim.  *Id.* at 679.  As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level."  550 U.S. at 555.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . .  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).  Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

## III.  *Allegations of the Complaint*

Plaintiff Daniels and Defendant NVR entered into a purchase agreement on April 24, 2011, in which Daniels agreed to buy and NVR agreed to sell a lot and home to be built thereon in Anne Arundel County, Maryland.  (Compl., ¶ 4, and Ex. 1.)  The parties agreed on a specific model home to be constructed by NVR for Daniels.  (Compl., ¶ 4.)  NVR further agreed that the home would be constructed according to certain energy efficiency guidelines, including a

particular level of insulation, and that agreed improvements to the lot were reflected in the plans and specifications provided to Daniels.  (*Id.* ¶¶ 5-9.)  Settlement occurred on August 12, 2011. (*Id.* ¶ 20.)

The complaint alleges the building permit application contained factual assertions inconsistent with the home actually constructed.  (*Id.* ¶¶ 13-14.)  The factual inaccuracies were allegedly reported to the Maryland State Department of Assessment and Taxation, resulting in a higher tax burden for Daniels.  (*Id.* ¶ 16.)  Daniels further alleges that NVR made significant departures from the plans and specifications in regard to the plumbing and undertook to correct those errors without applying for a revised building permit or securing another plumbing inspection.  (*Id.* ¶¶ 18-19.)  Daniels alleges that the house "was never completed in good and workmanlike fashion," was not constructed according to applicable building code, and did not comply with the promised energy efficiency standards.  (*Id.* ¶ 21.)  The complaint includes a lengthy list of building defects and deficiencies.  (*Id.* ¶ 23.)

In conjunction with and at the time of execution of the purchase agreement, NVR provided a specimen of a written warranty ("Limited Warranty") to Daniels.  (*Id.* ¶ 10.)  The Limited Warranty provided a one-year warranty "on the basic home," promising it would be free from defects in both materials and workmanship of the original construction.  (Def.'s Mot., Ex. A, ECF No. 21-1.)  In addition, NVR warranted the plumbing, electrical, and HVAC systems would be free of defects in workmanship of the original installation for two years.  (*Id.*)  Finally, NVR gave a ten-year warranty as to major structural defects in materials or workmanship of the original construction, *i.e.*, those significantly affecting the home's load-bearing functions or otherwise rendering the home unsuitable for residential purposes.  (*Id.*)  Daniels alleges she reported all of the defects and deficiencies listed in the complaint, as well as others, to NVR during the applicable warranty period and that more continue to arise.  (*Id.* ¶¶ 24-25.)  Daniels

and NVR engaged in a series of discussions regarding the reported defects and deficiencies.  (*Id.* ¶ 26.)  During the time of their discussions, Daniels and NVR entered into an agreement titled "Agreement Tolling Statute of Limitations," which tolled applicable statutes of limitation or repose as of June 18, 2012.  (*Id.* Ex. 4.)  Three addenda to the Tolling Agreement were executed, the cumulative effect of which was to maintain the date of June 18, 2012, as the tolling date for causes of action and to extend the expiration dates of the Limited Warranty's one-year and two-year warranties to October 1, 2013.   (*Id.* Ex. 5, collectively, with the original agreement, "Tolling Agreement.")

Daniels alleges she and NVR worked together "for some time," but "it became apparent that [NVR] was unwilling or unable to repair" her house and to remedy the defects.  (*Id.* ¶ 28.) She states that her house, "as currently constructed, is defective, unsafe, and the lower level . . . remains unusable."  (*Id.* ¶ 33.)  She alleges that NVR engaged in the conduct described in the complaint "with actual malice."  (*Id.* ¶ 35.)  She says she has sustained damage to her house, her furnishings, and other personal property, including mold infiltration; she claims the value of her house has been diminished and she is unable fully to use and enjoy her house; finally, she alleges she has incurred attorneys' fees, construction consultant fees, repair costs, and other expenses and damage. (*Id.* ¶ 36.)

The complaint includes nine counts:  breach of contract; breach of express warranty; breach of implied warranty; negligence; negligent misrepresentation; intentional misrepresentation; concealment or nondisclosure; unfair trade practices; and rescission.  Daniels seeks damages in excess of $75,000, rescission of the sales contract, and recovery of all monies paid to NVR.

## IV.  Analysis

NVR argues that all of the claims in this lawsuit are subject to a contract-based one-year limitations period and were time-barred before Daniels commenced this action in September 2013.  Consequently, NVR asserts it is entitled to judgment on the pleadings and dismissal with prejudice.

The limitations period is set forth in paragraph 13 of the purchase agreement:[1]

Claims and Disputes.  Purchaser and Seller covenant and agree that ***any and all claims arising out of or relating to the subject matter of this agreement***, including but not limited to any claims based in whole or in part on facts occurring before settlement, whether known or unknown, and that arise out of or relate to the subject matter of this agreement, settlement hereunder, the agreed improvements to the property (whether as-built or as-promised) and/or the herein described real estate, ***regardless of legal theory*** and regardless of the named respondents(s)/defendant(s) ("Claims"), ***shall be governed by a one (1) year limitation of action period and bar date running from the date the claim or cause of action accrues (if at all)***.  Consistent with the foregoing, all such claims based on ***matters occuring [sic] before the settlement date shall be deemed to have arisen and accrued***, if at all, and the aforesaid one year limitation of action period for all such claims shall begin to run ***not later than the settlement date***.  With the sole exception of counterclaims, any such claims initiated in any forum against any party to this agreement and/or their joint and several successors, members, affiliates, employees, agents, contractors and/or suppliers by any other party to this agreement and/or their successors, subrogees and assigns shall be deemed automatically barred and precluded as a matter of law and contract if not filed/initiated within that agreed one (1) year limitation of action period following settlement and before said bar date.  All application of the so-called "discovery rule" is mutually waived by the parties.  By executing this agreement, Purchaser acknowledges Purchaser's understanding and agreement to these terms and that the said one (1) year period is completely reasonable in all respects.  Notwithstanding the foregoing, these bar date terms shall not apply to claims for indemnity and/or contribution by Seller against Purchaser and/or any other person.  These rights may only be enforced by Purchaser and Seller and nothing herein shall be construed to create any third party beneficiary rights in any other person or entity.

(Compl., Ex. 1, ECF No. 2-1 (emphasis added.)

---

[1]  The original format for this paragraph was all capital letters.  The Court has reformatted the text for readability.

NVR points out that Daniels closed on her home on August 12, 2011, and it states that all of her claims based upon defects in the original construction were time-barred after August 12, 2012, due to the operation of this clause.  Since she did not file suit until September 30, 2013, she has no viable claim in the suit, according to NVR.  As for the Tolling Agreement, NVR argues that it only refers to tolling of "statutes of limitation" or "statutes of repose," that it makes no mention of the contractual limitations period, and that it did not toll the contractual limitations period—which ran out before the Tolling Agreement was executed.  NVR agrees that the Tolling Agreement also extended the periods of the Limited Warranty, but contends that Daniels did not sue NVR under the Limited Warranty.  This latter point is difficult, if not impossible, to square with the second count of the complaint, which claims NVR breached the express warranty.  It seems obvious that the express warranty and the Limited Warranty are one and the same, and that conclusion is buttressed by the purchase agreement, which states, "Purchaser shall receive the express written NVR limited warranty (the 'Limited Warranty') . . . ."  (Purchase Agreement ¶ 4.)  Nevertheless, any remedy available to Daniels under the Limited Warranty is through arbitration, based on the terms of the Limited Warranty.  It seems clear that she has complied with the prerequisites for invoking arbitration up to the point of making a written request that the dispute be decided by arbitration and filing written demand for arbitration with the American Arbitration Association and NVR.  It is up to Daniels whether to take those additional steps to begin the arbitration process.

The Court is frankly troubled by the ephemeral nature of the Tolling Agreement, which seems to have been carefully drafted to avoid any mention of the contractual limitations period and to make merely illusory the tolling of the "statutes of limitation" and "statutes of repose."[2]

---

[2]  It is hard for the Court to accept that Daniels was responsible for this choice of language, the effect of which obviously prejudices her.

Even so, the contractual limitations period, which survived the merger of the purchase agreement into the Limited Warranty and the deed, *see* Purchase Agreement ¶ 32, not only sets a one-year period for bringing a cause of action from the date of the settlement, August 12, 2011, but also specifies the operation and effect of the limitations period:   "[A]ny such claims . . . shall be automatically barred and precluded as a matter of law *and contract* if not filed/initiated within that agreed one (1) year limitation of action period following settlement and before said bar date."  (Purchase Agreement ¶ 13 (emphasis added).)  The Court reluctantly concludes, then, that the Tolling Agreement was ineffective to reset the clock on the contractual limitations period.

Daniels has argued that the contract merely altered the length of the limitations period prescribed by the otherwise governing statute, but that the statute of limitations still applies to her claim and, therefore, the Tolling Agreement renders her suit timely.   (Pl.'s Opp'n 8-9.) However, Maryland courts and the Fourth Circuit when interpreting Maryland law have found no difficulty in upholding contractual limitations periods in the absence of a controlling statute to the contrary or a clear showing of fraud, misrepresentation, or other unconscionable conduct. *See Amalg. Cas. Ins. Co. v. Helms*, 212 A.2d 311, 318-19 (Md. 1965) (approving contractual limitations period shorter than that provided by statute of limitations), *abrogated in part by statute*; *College of Notre Dame of Maryland, Inc. v. Morabito Consultants, Inc.*, 752 A.2d 265, 273, 275 (Md. Ct. Spec. App. 2000) (contractual modification of time for accrual of causes of action valid); *Hartford Acc. & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship*, 674 A.2d 106, 123 (Md. Ct. Spec. App. 1996) (tolling agreement created parties' own private, contractually established limitations period), *aff'd*, 695 A.2d 153 (Md. 1997); *Harbor Court Assocs. v. Leo A. Daly Co.*, 179 F.3d 147, 150-51 (4th Cir. 1999) (concluding contractually established accrual date consistent with Maryland law).

7

None of those exceptions applies, despite Daniels's arguments to the contrary.  First, Daniels contends that a Maryland statute prevents modification of any implied warranty, citing Section 10-203(d), Real Property, Maryland Code Annotated (LexisNexis 2010), and further contends that a contractual limitations period "modifies" the statutory implied warranties.  (Pl.'s Opp'n 16.)  Her argument is misfocused.  A "warranty" is implied in Maryland law by statute as to four aspects of a new home:  that it is free from faulty materials, constructed according to sound engineering standards, constructed in a workmanlike manner, and fit for habitation.  § 10-203(a).  The time period within which one may assert a breach of these implied warranties is not, itself, a "warranty."  Hence, modifying the limitations period for a plaintiff to sue for breach of implied warranties does not modify the warranties.  To the extent that this conclusion differs from that expressed in *Savage v. Centex/Taylor, LLC*, Civ. No. RDB-11-2134, 2012 WL 946698, at *6 (D. Md. 2012), the undersigned respectfully disagrees that the limitations period, within which a claim of breach of implied warranty may be brought, may not be varied by contractual agreement.  Further, the Maryland statutes provide a limitations period for breach of implied warranties, but the particular statute defining that limitations period does not prohibit modification of the limitations period.  § 10-204(d).  Nor does the general Maryland statute of limitations prohibit modification by contract—unlike a specific statute of limitations governing insurance and surety contracts, which cannot modify the statute of limitations.  *Morabito*, 752 A.2d at 272-73.

Second, without citation to any controlling authority, Daniels argues that a one-year limitations period is unreasonable.  Unfortunately for Daniels, the purchase agreement's contractual limitations clause also included a statement to the effect that the one-year limitations period is reasonable.  (Purchase Agreement ¶ 13.)  Although no Maryland appellate decision is directly on point, NVR has provided a copy of a decision by a Maryland trial court expressly

holding that a one-year limitations period in a homebuyer's contract is reasonable.  *Shepard v.*

*NVR, Inc.*, No. 10-C-10-2716, slip op. at 6 (Frederick Cnty. Cir. Ct. Oct. 28, 2011) (citing

*Morabito*).   This lower court decision is consistent with Fourth Circuit precedent.  *See In re*

*Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 287 (4th Cir. 2007) (concluding one-year contractual

limitations period is reasonable; "Courts have frequently found contractual limitations periods of

one year (or less) to be reasonable.").   Finding no authority to the contrary, this Court holds that

the one-year contractual limitations period in the purchase agreement is reasonable.

Third, Daniels unpersuasively argues that the contractual limitations period is invalid

because she alleges that NVR engaged in unfair and/or deceptive trade practices "by forcing Ms.

Daniels to accept the Purchase Agreement which contains illegal[,] unenforceable and other

unfair provisions."   (Pl.'s Opp'n 11 (quoting Compl. ¶ 80).)   She also claims that NVR's

misrepresentation and fraud induced her to enter the Purchase Agreement.   (*Id.* (citing Compl.

¶¶ 55-90).)  Her allegations amount to conclusions as to the truth or falsity of the statements of

NVR's contractual obligations made in the purchase agreement.   She has not alleged any

misrepresentations to her outside of what is stated in the contract itself.   The Court concludes no

basis exists to find that she entered into the contract based upon fraud, duress, or any other

unconscionable conduct.   Consequently, the three bases cited in the *Morabito* opinion do not

furnish a basis for invalidating the one-year contractual limitations period.

Thus, the only available argument is that substituting a contractual limitations period for

a statutory limitations period violates public policy.   But Maryland courts have expressed a clear

preference for upholding voluntary bargains that limit legal remedies, even if it is argued that

doing so violates public policy:

> Maryland courts have been hesitant to strike down voluntary bargains on public
> policy grounds, doing so only in those cases where the challenged agreement is
> patently offensive to the public good, that is, where "the common sense of the

entire community would . . . pronounce it" invalid.  This reluctance on the part of the judiciary to nullify contractual arrangements on public policy grounds also serves to protect the public interest in having individuals exercise broad powers to structure their own affairs by making legally enforceable promises, a concept which lies at the heart of the freedom of contract principle.

In the final analysis, it is the function of a court to balance the public and private interests in securing enforcement of the disputed promise against those policies which would be advanced were the contractual term held invalid. Enforcement will be denied only where the factors that argue against implementing the particular provision clearly and unequivocally outweigh "the law's traditional interest in protecting the expectations of the parties, its abhorrence of any unjust enrichment, and any public interest in the enforcement" of the contested term.

*Maryland-National Capital Park & Planning Comm'n v. Washington National Arena*, 386 A.2d 1216, 1228-29 (Md. 1978).  Here, the Court concludes the parties validly contracted to establish a private, contractually limited period of time for Daniels to sue NVR and that, with the exception of her claim under the Limited Warranty, her lawsuit fell outside of that contractual limitation.  No basis can be found for holding the contractual limitation void as against public policy.

## V. Conclusion

The Court concludes that all of Daniels's causes of action outside of the Limited Warranty are barred as untimely and that her claim under the Limited Warranty must be submitted to arbitration.  NVR's motion, therefore, will be granted and the case will be dismissed by separate order.

DATED this 30th day of October, 2014.

BY THE COURT:

_____/s/_____

James K. Bredar
United States District Judge

10